Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| SARA MARTÍNEZ MEDINA<br><br>Apelada<br><br>V.<br><br>JUAN CARLOS TORRES LIZARDI<br><br>Apelante | KLAN202400094 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>E DP2016-0103 (702)<br><br>Sobre:<br>DAÑOS |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

El apelante, Juan Carlos Torres Lizardi, presenta recurso de apelación mediante el cual solicita que revoquemos la sentencia en la que el Tribunal de Primera Instancia declaró Ha Lugar una demanda sobre fraude de cierta escritura, la cual él era beneficiado.

Los hechos que anteceden la determinación que revisamos hoy son los siguientes:

**I**

El 27 de abril de 2016, los demandantes, Sara Martínez Medina, María Orellana Colón, Domingo Estrada Correa y su sociedad legal de gananciales, presentaron una demanda por fraude y daños y perjuicios contra el apelante y el notario público, Carlos M. Palmer Ramos. Los demandantes alegaron que:

(1) Sara Martínez Medina no sabía leer ni escribir y que su capacidad visual era limitada.

(2) El 21 de marzo de 2013, Juan Torres Lizardi se convirtió de forma fraudulenta y en común acuerdo con el notario público,

Carlos M. Palmer Ramos, en dueño del inmueble descrito en la demanda y perteneciente a Sara Martínez Medina.

(3) Juan Carlos Torres Lizardi advino titular de dicho inmueble mediante la escritura de donación número 21 otorgada el 21 de marzo de 2013 ante el notario público, Carlos M. Palmer Ramos, inscrita en el Registro de la Propiedad en el folio 101 del tomo 1770 de Caguas, finca 42867, inscripción quinta y última.

(4) Sara Martínez Medina no compareció en dicha escritura para donar el inmueble en controversia a su hijastro, Juan Carlos Torres Lizardi, y nunca expresó la intención de donárselo.

(5) La escritura pública de donación se hizo de forma fraudulenta, mientras Sara Martínez Medina estaba hospitalizada.

(6) Juan Carlos Torres Lizardi y Carlos M. Palmer Ramos actuaron en común acuerdo y de manera maliciosa para cometer un fraude y que el inmueble en controversia fuera adjudicado en el Registro de la Propiedad a nombre del señor Torres Lizardi.

(7) Juan Carlos Torres Lizardi retiró más de mil dólares de la cuenta de banco de Sara Martínez Medina, sin su consentimiento.

La parte demandante, además, alegó que:

(1) La demandante, María Orellana Colón, es prima de Sara Martínez Medina y le ha brindado los cuidados y ayuda que necesita, debido a las condiciones y dificultades que enfrenta.

(2) María Orellana Colón pernocta a diario en la residencia de Sara Martínez Medina.

(3) El 13 de abril de 2013, Sara Martínez Medina otorgó un Poder General a María Orellana Colón para que le representara en todo contrato o negocio jurídico, en caso de que sufriera una incapacidad o fuera declarada incapaz judicialmente.

(4) Sara Martínez Medina expresó su intención de vender el inmueble descrito en la demanda.

(5) Domingo Estrada Correa le hizo varios arreglos a la propiedad de Sara Martínez Medina en los que invirtió alrededor de seis mil dólares del peculio de la sociedad de gananciales que compone con María Orellana Colón.

(6) Durante los trámites de la venta se realizó un estudio de título, mediante el que los demandantes se enteraron de que el inmueble constaba inscrito en el Registro de la Propiedad a nombre del apelante.

Los remedios solicitados por los demandantes fueron:

1. la restitución a Sara Martínez Medina de su condición de propietaria del inmueble en controversia.

2. que los demandados indemnizaran solidariamente a los demandantes en una cantidad no menor de $70,000.00 por los daños y angustias mentales sufridos.

3. el pago de las costas, gastos y honorarios.

4. el pago de daños y angustias mentales al matrimonio Estrada Orellana, por no menos de diez mil dólares.

5. cualquier otro pronunciamiento que procediese en derecho.

Ambos demandados cuestionaron la capacidad de María Orellana Colón y Domingo Estrada Correa para demandar e invocaron la Fe Pública Notarial, frente a las alegaciones de fraude de los demandantes. El apelante presentó una reconvención en la que reclamó una indemnización por los daños causados por la usurpación de su derecho titular, la devolución de la posesión del inmueble y honorarios de abogado.

El 3 de agosto de 2021, el TPI dictó una Resolución en la que desestimó todas las alegaciones de fraude en el otorgamiento de la escritura porque Sara Martínez Medina falleció y se incumplió con la sustitución de parte. El foro primario desestimó las alegaciones de fraude de los codemandantes, debido a que el matrimonio se

quedó sin prueba admisible para impugnar la escritura de donación. Por consiguiente, les ordenó cesar y desistir de ostentar el control y posesión de la propiedad en controversia y a permitir el acceso al demandado. Finalmente ordenó la continuación de los procedimientos para determinar en un juicio plenario: (1) si existía algún crédito a favor de los demandantes por las alegadas mejoras, (2) si procedía responsabilizar a ambos demandados por sus actuaciones sobre la propiedad y (3) si se configuraban los daños y angustias mentales alegados en la reconvención.

No obstante, el TPI encontró que existía controversia sobre: (1) la existencia de un crédito a favor de los demandantes por las mejoras que alegan realizaron en la propiedad en controversia, (2) si procede responsabilizar a los demandados por su actuación con relación al inmueble en controversia y (3) si se configuran los daños que alega el demandado.

El codemandado, Carlos M. Palmer Ramos, pidió la desestimación de la reclamación en su contra, debido a que las alegaciones se circunscribían al fraude e invalidez de la escritura de donación. El Lcdo. Palmer Ramos adujo que la desestimación de toda causa de acción relacionada a la donación conllevaba la desestimación de la demanda en su contra.

El 29 de junio de 2022, el TPI dictó una Sentencia Parcial en la que desestimó la demanda por fraude y daños y perjuicios contra el abogado notario, Carlos M. Palmer Ramos. El TPI incorporó todas las determinaciones de hecho no controvertidas de su Resolución del 3 de agosto de 2021. Por consiguiente, desestimó todas las alegaciones relacionadas a los actos fraudulentos y a la invalidez de la escritura de donación; desestimó la demanda contra el notario y ordenó la continuación de los procedimientos en cuanto a los hechos en controversia expresados en la Resolución del 3 de agosto de 2021.

El foro apelado realizó la vista del caso en su fondo y dictó la sentencia apelada en la que determinó los hechos a continuación. La señora Sara Martínez Medina estuvo casada con el padre del demandado y enviudó en el año 2013, no tuvo hijos, no sabía leer ni escribir, era ciega, acostumbraba a firmar con una equis y murió en el año 2018. Su único caudal era el inmueble objeto de este pleito. El demandado, Juan Carlos Torres Lizardi, es hijo de quien en vida fue esposo de Sara Martínez Medina. El esposo de la señora Martínez Medina falleció en el año 2013. La señora Martínez Medina estuvo hospitalizada en tres ocasiones distintas, durante los meses de marzo y abril del año 2013. Durante su hospitalización, otorgó un poder a la demandante, María Orellana Colón y una escritura en la que donó al demandado el único bien inmueble de su propiedad. La escritura se otorgó el 21 de marzo de 2013, mientras doña Sara estaba impedida visualmente y en violación a la ley notarial. El demandado declaró que los testigos instrumentales eran su amigo, Jesús González Fuentes y el emplazador del abogado notario que otorgó la escritura, José Miguel Vázquez Acevedo. Además, admitió que la señora Martínez Medina no conocía a los testigos y que los conoció ese mismo día. El abogado del demandado argumentó que la ley notarial solo exige la comparecencia de testigos de conocimiento. El TPI declaró no ha lugar su objeción, porque la condición de ceguera de la otorgante requería la presencia de testigos instrumentales conocidos por ella, tal como se anunciaron en la escritura. El instrumento público se otorgó fraudulentamente y en violación a la ley notarial. Determinaciones de hecho 1-7 de la sentencia apelada.

Otros hechos que constan en la sentencia apelada son los siguientes. El abogado del demandado objetó, porque alegó que la validez de la escritura fue establecida mediante sentencia sumaria. El TPI aclaró que en esa sentencia solo se establecieron los

requisitos de forma del instrumento público otorgado. El cumplimiento con la ley notarial y la otorgación fraudulenta de la escritura se evidencia del testimonio del propio demandado que admitió que llevó los testigos instrumentales. El abogado notario que otorgó la escritura admitió que había sido desaforado previamente por prácticas notariales indebidas. Determinación de hecho núm. 7 de la sentencia apelada.

El TPI también hizo constar los hechos a continuación. El demandado no cuidaba a doña Sara y nunca la visitó, luego de que salió del hospital en el año 2013 y hasta su muerte en el año 2018. Los demandantes realizaron mejoras a la propiedad en controversia. Cuando se dispusieron a venderla descubrieron que estaba inscrita en el Registro de la Propiedad a nombre del demandado. El señor Torres Lizardi retiró más de mil dólares de la cuenta de doña Sara, sin su consentimiento. Determinaciones de hecho 8-10 de la sentencia apelada.

El foro apelado declaró CON LUGAR la demanda y NO HA LUGAR la reconvención. El TPI declaró nula la escritura de donación al amparo del Art. 343 del Código Civil de 2020 y ordenó al Registrador de la Propiedad inscribir la propiedad a favor de doña Sara Martínez Medina, una vez la sentencia adviniera final y firme. Además, ordenó al apelante pagar a la apelada $5,000.00 de honorarios por temeridad, porque la escritura se otorgó a sabiendas de que se estaba violando la ley notarial, mediante dolo y engaño para obtener las huellas dactilares de la otorgante.

Inconforme, el apelante presentó este recurso en el que alega que:

> Erró el Tribunal de Instancia al entender en una causa de acción sobre la cual los reclamantes no tenían capacidad jurídica para obtener remedio alguno.

> Erró el Tribunal de Instancia al entender en una causa de acción sobre la cual ya se había pronunciado un dictamen judicial de carácter final y firme.

Erró el Tribunal de Instancia al declarar la nulidad de un negocio jurídico, en el caso en particular de la donación recogida en la escritura 21 de 21 de marzo de 2013.

Erró el Tribunal de Instancia al determinar que procedía imponerle a la parte demandada apelante honorarios de abogado por temeridad.

Erró el Tribunal de Instancia en la apreciación de la prueba realizando determinaciones de hechos no sustentadas por la misma.

Erró el Tribunal de Instancia al no estimar la reconvención presentada por la parte apelante.

## II.

### La Doctrina de la Deferencia

Nuestro esquema probatorio otorga gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que realiza el juzgador del foro primario. Como norma general, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro. Tal deferencia obedece a que es el TPI el foro que mejor conoce las particularidades del caso, tiene el contacto con los litigantes y examina la prueba presentada por estos. *Citibank NA v. Cordero Badillo,* 200 DPR 724, 735-736 (2018). Por eso, el foro de instancia es el que está en mejor posición para tomar las medidas para cimentar el curso a trazar en el caso hasta su disposición final. *IG Builders et al. v. BBVAPR,* 185 DPR 288, 307 (2012).

Los tribunales revisores únicamente podremos sustituir el criterio del foro primario por el nuestro, en circunstancias extraordinarias en las que se pruebe que actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho. *Citibank NA v. Cordero Badillo,* supra, pág. 736.

Un tribunal incurre en abuso de discreción, cuando el juez ignora sin fundamento algún hecho material, le concedió

demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Citibank NA v. Cordero Badillo,* supra, pág. 736; *Pueblo v. Custodio Colón,* 192 DPR 567, 589 (2015).

### La Doctrina de la Ley del Caso

Los derechos y obligaciones adjudicados mediante un dictamen judicial final y firme son la ley del caso. El propósito de la doctrina de la ley del caso es evitar que los tribunales reexaminen asuntos ya considerados dentro de un mismo proceso. La costumbre es que las controversias adjudicadas por el foro primario o por un tribunal apelativo no pueden ser reexaminadas. Así se garantiza el trámite ordinario y expedito en los casos y se promueve la estabilidad y certeza del derecho. Un dictamen judicial se convierte en la ley del caso cuando constituye una decisión final en los méritos de la cuestión considerada y decidida. Esta doctrina aplica a las controversias adjudicadas por los tribunales de instancias y apelativos. Las determinaciones de un tribunal apelativo constituyen la ley del caso en todos los asuntos considerados. Su cumplimiento es obligatorio tanto para el foro de instancia como el apelativo. *Berkan et al. v. Mead Johnson Nutrition,* 204 DPR 183, 200-201 (2020); *Cacho Pérez v. Hatton Gotay y otros,* 195 DPR 1, 8-9 (2016).

No obstante, la doctrina de la ley del caso permite excepciones y no constituye un mandato inflexible. La razón para las excepciones es que el objetivo de la ley del caso es servir a favor de la justicia y no de la injustica. Una norma de derecho distinta puede aplicarse en circunstancias excepcionales, cuando la determinación previa es errónea y puede causar una injusticia grave. La aplicabilidad de esta doctrina solo puede descartarse

cuando se presenta un atentado contra los principios básicos de la justicia. *Berkan et al. v. Mead Johnson Nutrition,* supra*,* págs. 201-202; *Cacho Pérez v. Hatton Gotay y otros,* supra*,* págs. 9-10.

**Legitimación Activa**

Los tribunales no pueden ejercer válidamente su poder judicial, si no existe un caso o controversia real. Únicamente pueden evaluar los méritos de los casos justiciables. Un caso es justiciable, cuando existe una controversia genuina entre partes opuestas, con un interés real en obtener un remedio que afecte sus relaciones jurídicas. La existencia de legitimación activa es necesaria para cumplir con el principio de justiciabilidad y para adjudicar los méritos de una controversia. La legitimación activa es la capacidad requerida al promovente de una acción para comparecer como litigante en el tribunal y para realizar actos procesales con el propósito de obtener una sentencia vinculante. El examen de la legitimación activa es un mecanismo usado por los tribunales para: (1) determinar su jurisdicción, (2) no adentrarse en los dominios de otras ramas de gobierno y (3) no lanzarse a resolver cuestiones hipotéticas o planteamientos dentro de un contexto adecuado. La doctrina de legitimación activa exige que la parte que solicita un remedio judicial demuestre que: (1) ha sufrido un daño claro y palpable, (2) el daño es real, inmediato y preciso, no abstracto o hipotético, (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada y (4) la causa de acción nace al palio de la Constitución o de una ley. *Hernández, Santa v. Srio. de Hacienda,* 208 DPR 727, 738-739 (2022).

**Sustitución de Parte**
**Regla 22.1 de Procedimiento Civil, 32 LPRA Ap. V**

La Regla 22.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 22.1, regula el procedimiento de sustitución de parte y dispone lo siguiente:

cualquiera de las partes en el procedimiento o sus abogados o abogadas notificarán el fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días, contados desde la fecha cuando se conozca tal hecho. El tribunal, a solicitud hecha dentro de los noventa (90) días siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas. Los y las causahabientes o representantes podrán presentar la solicitud de sustitución del finado o de la finada, y dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67 y a las que no lo sean en la forma que dispone la Regla 4. La demanda se enmendará a los únicos fines de conformar la sustitución e incorporar las nuevas partes al pleito. Transcurrido el término sin que se haya solicitado la sustitución, se dictará sentencia para desestimar el pleito sin perjuicio.

(c) De fallecer una o más partes demandantes, o uno o más partes demandadas, que fueron partes en un pleito en que el derecho reclamado subsista sólo a favor de las demandantes o contra las partes demandadas que sobrevivan, el pleito no finalizará. Se notificará al tribunal el hecho de la muerte y el pleito continuará a favor o contra las partes sobrevivientes.

El tratadista Rafael Hernández Colón, ha expresado que, los pleitos se desestimarán sin perjuicio cuando no se ha realizado la correspondiente sustitución de parte dentro del término dispuesto por el tribunal. R. Hernández Colón, *Derecho Procesal Civil*, 6ta Edición, LexisNexis, 2017, págs. 175-176.

Bastará con que se notifique el hecho de la muerte para que el pleito continúe a favor o en contra de las partes sobrevivientes. C Rosa Urrutia de Basora y L.M. Negrón Portillo, *Reglas de Procedimiento Civil de Puerto Rico: Preguntas y Respuestas*, 4ta. Edición Revisada, SITUM Inc., 2010, pág. 99-100. La notificación de sustitución de parte es mandatoria. La sustitución no es discrecional; procede si en relación con la solicitud de sustitución se ha cumplido con el trámite procesal provisto en la Regla 22.1 de Procedimiento Civil, *supra. Echevarría Jiménez v. Sucn. Pérez Meri*, supra, pág. 685.

En aquellas instancias en que se deba sustituir a una parte por otra que no está en el pleito, será necesario adquirir

jurisdicción sobre la persona emplazándole y notificándole de la solicitud de sustitución de partes de acuerdo con lo dispuesto en la Regla 4 de Procedimiento Civil, *supra.* La parte sustituida tiene derecho a que se le notifique siguiendo el trámite de estricto cumplimiento provisto por la Regla 4, *supra,* de manera que tenga la oportunidad de ser oído y defenderse si así lo desea. *Echevarría Jiménez v. Sucn. Pérez Meri,* supra, pág. 686.

El trámite de sustitución de otro modo no debe afectar los derechos sustantivos de las partes. La parte que sustituye se coloca en "los mismos zapatos" que la parte sustituida. *Vilanova v. Vilanova,* 184 DPR 824, 838 (2012); *Pereira v. I.B.E.C.,* 95 DPR 28, 66 (1967). Para que la sucesión pueda demandar o pueda sustituir a un demandante fallecido, es necesario que se traiga al pleito cada uno de sus miembros. *Vilanova v. Vilanova,* supra, pág. 839.

### Los Contratos y el Dolo según el Código Civil de 1930[1]

Los contratos se perfeccionan por el mero consentimiento. Las partes quedan obligadas desde entonces al cumplimiento de lo expresamente pactado y a todas las consecuencias que, según su naturaleza, sean conforme a la buena fe, uso y las leyes. Art. 1210, 31 LPRA sec. 3375. El consentimiento es uno de los elementos esenciales para la existencia de los contratos. Art. 1213, 31 LPRA sec. 3391. Según el Art. 1217, 31 LPRA sec. 3404, el consentimiento producido por error, violencia, intimidación o dolo es nulo. El dolo existe cuando uno de los contratantes utiliza palabras o maquinaciones insidiosas para inducir al otro a celebrar un contrato que sin ellas no habría hecho. Art. 1221, 31 LPRA sec. 3408. El Art. 1222, 31 LPRA sec. 3409, nos deja claro que para que se produzca la nulidad del contrato, el dolo tiene que ser grave y no puede haber sido empleado por ambos contratantes.

---

[1] El Código Civil de 1930, aunque está derogado, es el aplicable a la fecha de los hechos.

El dolo incidental solo obliga a la indemnización por daños y perjuicios. La acción de nulidad puede ser ejercitada por los obligados principal o subsidiariamente en virtud de ellos. Art. 1254, 31 LPRA sec. 3513.

El Tribunal Supremo de Puerto Rico ha reconocido que el dolo es todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena y que generalmente es utilizado para beneficio propio. La parte que actúa dolosamente ha querido el acto y también ha previsto y querido sus consecuencias antijurídicas. El dolo grave que ocasiona la nulidad, también se conoce como dolo causante y es el que motiva, sirve de ocasión, lleva a celebrar el contrato. Sin la existencia del dolo grave, el contrato no se hubiese otorgado, porque es el que determina el consentimiento. *Colón v. Promo Motors Imports Inc.,* 144 DPR 659, 666-667 (1997).

Aunque el dolo no se presume, no tiene que probarse directamente y puede establecerse mediante inferencias y con evidencia circunstancial. El dolo puede manifestarse en la etapa de formación del contrato que ocurre en el momento de la contratación. Además, puede manifestarse en el momento del cumplimiento o consumación del contrato, cuando se omite consciente y voluntariamente cumplir con la obligación. Los tribunales que evalúan si el consentimiento estuvo viciado por una acción dolosa tienen que considerar, entre otras cosas, la preparación académica del perjudicado, su condición social y económica y las relaciones y tipo que maneja. Un caso de dolo no tiene que estar basado en un simple hecho. El dolo puede ser causado por un conjunto de hechos y por la evolución de circunstancias y manejos engañosos. Igualmente, puede aparentar ser incidental desde la perspectiva general de los contratos, pero

ser esencial para los contratantes. *Colón v. Promo Motors Imports Inc.,* supra, págs. 668-669.

### El Principio de la Buena Fe en la contratación, según el Código Civil de 1930

Los contratantes están obligados a cumplir ciertos deberes especiales de conducta. La buena fe es parte de todo negocio jurídico, porque impone a las partes un deber de lealtad recíproca en los negocios. El principio de buena fe conlleva la lealtad en el tratar, el proceder honrado y leal, supone el guardar la fidelidad de la palabra dada, no defraudar la confianza y no abusar de ella. Además, supone el conducirse con el pensamiento honrado que se espera de los contratantes. El Art. 1210 del Código Civil, 31 LPRA sec. 3375, obliga a los contratantes a cumplir con todo lo expresamente pactado y con todas las consecuencias que, según su naturaleza, sean conforme a la buena fe, el uso y la ley. *800 Ponce de León v. AIG*, 205 DPR 163, 183 (2020); *VDE Corporation v. F & R Contrators,* 180 DPR 21, 34 (2010).

### El Contrato de Donación en el Código Civil de 1930

La donación es el acto de liberalidad por el cual una persona dispone gratuitamente de una cosa en favor de la otra que la acepta. Art. 558, 31 LPRA sec. 1981. Según el Art. 560, 31 LPRA sec. 1983, la donación puede ser puramente graciosa, sin condición alguna y por mera liberalidad. Igualmente puede ser onerosa, porque está sujeta a que el donatario cumpla con un gravamen sobre el valor de lo donado. Por último, puede ser remuneratoria. Las donaciones intervivos se rigen por las disposiciones generales de los contratos y obligaciones. Art. 563, 31 LPRA sec. 1986. Las que producen sus efectos por la muerte del donante se rigen por la sucesión testamentaria. Art. 562, 31 LPRA sec. 1985. Las donaciones se perfeccionan desde que el donante conoce la aceptación del donatario y pueden ser hechas por todos

aquellos con capacidad de contratar y disponer de sus bienes. Arts. 565 y 566, 31 LPRA secs. 1988 y 2001. Igualmente pueden ser aceptadas por todos los que no estén especialmente incapacitados. Art. 567, 31 LPRA sec. 2002. La donación de inmuebles tiene que ser realizada mediante escritura pública e incluir una expresión individual de los bienes donados y el valor de las cargas que debe satisfacer el donatario. Art. 575, 31 LPRA sec. 2010. La donación podrá comprender todos los bienes presentes del donante o parte de ellos. No obstante, el donante tiene que reservar en propiedad o en usufructo, lo necesario para vivir. Art. 576 del Código Civil, 31 LPRA sec. 2021.

### Invalidez de los Contratos en el Código Civil de 2020

El Art. 341, 31 LPRA sec. 6311, define la invalidez como una sanción legal en la que el tribunal priva a un negocio jurídico de sus efectos propios, debido a que existe un vicio originario, esencial e intrínseco al acto. La invalidez puede invocarse por vía de acción o defensa. El negocio jurídico puede ser nulo o anulable. Un negocio es nulo por las razones siguientes: (a) el objetivo, la causa o el consentimiento son inexistentes, (b) el objeto o la causa son ilícitos, (c) carece de las formalidades exigidas por la ley para su validez o (d) es contrario a la ley imperativa, la moral o el orden público. No obstante, es anulable si: (a) el otorgante tiene incapacidad de obrar, (b) concurre algún vicio de la voluntad y (c) el acto adolece de un defecto de forma no solemne. Art. 342, 31 LPRA sec. 6312.

Según el Art. 343, 31 LPRA sec. 6313, cualquier interesado que no haya actuado con mala fe para lograr un provecho puede solicitar la declaración de invalidez de un negocio jurídico nulo. El tribunal también podrá declarar la invalidez de oficio cuando es manifiesta. El Art. 344, 31 LPRA sec. 6314, establece que la invalidez de un negocio jurídico anulable solo puede declararse a

solicitud de la persona en cuya protección se establece la invalidez. Sin embargo, si la anulabilidad es por falta de capacidad para obrar, puede ser solicitada por el incapaz o su representante legal si no actuó con dolo. Por último, el Art. 345, 31 LPRA sec. 6315, dispone que la sentencia de invalidez tiene el efecto principal de: (1) declarar la invalidez del negocio jurídico nulo, desde su origen o desde el momento en que advino nulo o (2) disponer la invalidez del negocio jurídico anulable con efecto retroactivo al momento de su otorgamiento.

### Principio de irretroactividad

El Art. 1812 del Código Civil de 2020, 31 LPRA sec. 1178, establece que los actos y contratos celebrados válidamente bajo el régimen de la legislación anterior surten todos sus efectos conforme a ella. No obstante, con las limitaciones establecidas en este código. Los actos y contratos celebrados bajo la legislación anterior que son ineficaces bajo dicha legislación no adquieren validez porque este Código disponga algo distinto sobre su eficacia. El principio de irretroactividad en la aplicación de la ley también formó parte del Código Civil de 1930. El Art. 3 del Código Civil de 1930 estableció ese principio.

El Tribunal Supremo de Puerto Rico reconoció en *Díaz Ramos v. Matta Irizarry,* 198 DPR 916, 929-930 (2017), y bajo la vigencia del Código Civil de 1930 que, como norma general, nuestro ordenamiento jurídico impide la aplicación retroactiva de la ley, salvo que se hubiese dispuesto expresamente lo contrario. Según lo resuelto, el principio de irretroactividad es una expresión o efecto del valor de la seguridad jurídica. A través de este principio se intenta mantener un estado de certeza e inamovilidad, para que los sujetos actúen amparados por una determinada legislación.

No obstante, el principio de irretroactividad no es absoluto ni rígido. Su aplicación admite excepciones. La retroactividad de una

ley aplica si así lo ha dispuesto el legislador expresa o tácitamente. *Díaz Ramos v. Matta Irizarry,* supra, pág. 929; *Rivera Padilla et al. v. OAT,* 189 DPR 315, 340 (2013). La presunción de irretroactividad prevalece, cuando la intención del legislador de no aplicarlo no consta de manera diáfana y clara. La intención de la aplicación retroactiva de la ley debe aparecer expresamente o surgir claramente del estatuto. No obstante, ante la falta de un mandato expreso del legislador, solamente procede impartirle efecto retroactivo a la ley, cuando el propósito legislativo es obvio y patente y la aplicación retroactiva es necesaria para corregir un grave mal social o impartir justicia para los peticionarios. *Rivera Padilla et al. v. OAT,* supra, pág. 340; *Torres Rodríguez v. Carrasquillo Nieves,* 177 DPR 728, 758 (2009); *Nieves Cruz v. UPR,* 151 DPR 150, 159 (2000). La excepción se justifica cuando es necesario para la transformación y el progreso de situaciones pasadas que deben eliminarse por razones de justicia o interés general. Dicha excepción aplica principalmente a normas de derecho público, referente a males sociales que deben remediarse. *Nieves Cruz v. UPR,* supra, pág. 158.

### Los Testigos Instrumentales y Testigos de Conocimiento

La intervención de testigos instrumentales en un instrumento público es necesaria cuando alguno de los otorgantes no sabe o no puede leer o firmar. Los testigos instrumentales presencian el acto de lectura, consentimiento, firma y autorización del instrumento público. Su comparecencia hace indispensable la unidad del acto y así lo hará constar el notario en la escritura. Arts. 20 y 24 de la Ley Núm. 75 de 2 de julio de 1987, 4 LPRA secs. 2038, 2042. El instrumento tiene que leerse dos veces en voz alta, cuando alguno de los otorgantes no sabe o no puede leer. Una de las veces tiene que leerlo el notario. La otra lectura tiene que ser realizada por un testigo designado por el otorgante. El notario tiene

que dar fe de que se ha cumplido con el procedimiento de lectura. El otorgante que es ciego o sordo y que no sabe leer y firmar designará un testigo que, a su ruego, lea y firme por él la escritura o ambas cosas. El notario hará constar estas circunstancias. Art. 21 de la Ley Núm. 75, *supra*, 4 LPRA sec. 2039. Los empleados del notario no pueden ser testigos instrumentales. La prohibición se extiende a los parientes hasta el cuarto grado de consanguinidad y segundo de afinidad de las partes interesadas y del notario. Art. 22 de la Ley Núm. 75, *supra,* 4 LPRA sec. 2040. Los instrumentos públicos son nulos, cuando los testigos instrumentales son los que están prohibidos en la sección 2040, *supra.* Art. 34 de la Ley Núm. 75, *supra,* 4 LPRA sec. 2052. Cuando cualquiera de los otorgantes no sepa o no pueda firmar, el notario tiene que exigir que fije las huellas digitales de los dos dedos pulgares de la mano. Sus huellas tienen que estar junto a la firma del testigo que haya designado. Art. 25 de la Ley Núm. 75, *supra*, 4 LPRA sec. 2043.

El testigo de conocimiento tiene la función principal de identificar a los comparecientes que el notario no conoce personalmente. La responsabilidad del notario se limita a conocer personalmente a los testigos de conocimiento. Sus empleados y parientes pueden ser testigos de conocimiento, al igual que los parientes de los comparecientes, sin importar el grado de consanguinidad ni afinidad. Reglas 29 a 31 del Reglamento Notarial.

### Honorarios de Abogado

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, autoriza a los tribunales a ordenar en la sentencia, el pago de honorarios por temeridad. La sanción procede contra el abogado o la parte perdidosa que actuó con temeridad o frivolidad. El objetivo de la sanción es disuadir la litigación frívola, compensar a la parte que no ha sido temeraria por los gastos incurridos y fomentar las

transacciones. El concepto de temeridad no está definido en las Reglas de Procedimiento Civil. El Tribunal Supremo de Puerto Rico ha delimitado sus contornos. El concepto temeridad es amplio e incluye las actuaciones de un litigante que: (1) ocasionan un pleito que pudo evitarse, (2) prolongan indebidamente el trámite judicial u (3) obligan a la otra parte a gastos innecesarios para hacer valer sus derechos. Un litigante perdidoso es temerario cuando, su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista, obliga a la otra parte innecesariamente a las molestias, gastos e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 145-148.

La facultad de imponer honorarios de abogado y de determinar su procedencia es la mejor arma que tienen los tribunales para gestionar eficientemente los procedimientos judiciales y la administración de la justicia. Igualmente, es la mejor arma para proteger a los litigantes de la dilación y gastos innecesarios. La parte que insiste contumazmente en alegar algo sin prueba fehaciente, que niega hechos que le constan o que son de fácil corroboración y que dilata los procesos judiciales para no responder por sus obligaciones es temeraria. Además, es temerario el que niega totalmente su responsabilidad por los hechos que motivan la demanda. *SLG González-Figueroa v. SLG et al.,* supra*, pág. 150. La imposición de honorarios de abogado por temeridad descansa en la sana discreción judicial que solo será variada en apelación, cuando se demuestra un abuso de discreción. *SLG González-Figueroa v. SLG et al.,* supra, pág. 150.

**III**

El apelante cuestiona en el primer señalamiento de error, la legitimación activa de la parte demandante para solicitar la nulidad de la donación. Su planteamiento es correcto. La

demandante no tiene legitimación activa porque ese derecho pertenece a la sucesión de la donante. Sin embargo, eso no afecta la jurisdicción del tribunal para declarar la nulidad del instrumento público al amparo del Art. 342 del Código Civil de 2020, *supra.*

Los señalamientos de errores segundo, tercero y quinto serán discutidos conjuntamente, porque están íntimamente relacionados. El apelante alega que la sentencia dictada el 29 de junio de 2023 es la ley del caso y que impide al TPI atender y resolver toda controversia relacionada a la nulidad del contrato de donación. Además, objeta la aplicación del Código Civil de 2020, *supra,* y cuestiona la apreciación de la prueba y adjudicación de credibilidad del foro primario.

El apelante no tiene razón. El TPI no cometió los señalamientos de error segundo, tercero y quinto. Aunque la norma general es que la doctrina de la ley del caso impide que los tribunales reexaminen controversias previamente adjudicadas en el pleito, su aplicación no es absoluta, ni inflexible como pretende el apelante. La doctrina de la ley del caso puede ser obviada cuando su aplicación fomenta y permite una injusticia. La aplicación de la doctrina de la ley del caso cede cuando representa un atentado a los principios básicos de la justicia. Igual ocurre con el principio de irretroactividad establecido en el Código Civil del 2020, *supra.* La prohibición de irretroactividad en la aplicación de la ley cede cuando es necesario para lograr la transformación y progreso de situaciones pasadas que deben eliminarse por razones de justicia e interés social.

Los hechos de este caso justifican obviar el cumplimiento de ambas doctrinas para evitar un atentado a los principios básicos de la justicia y en pro del interés social. La prueba presentada y no controvertida nos deja claro que el apelante actuó de forma

fraudulenta y en violación de la ley para lograr que una anciana ciega, que no sabía leer ni escribir, hospitalizada y deprimida por la muerte de su esposo, le donara su única propiedad inmueble. Luego de lograr su objetivo, no volvió a visitarla con la excusa de que la demandante no les permitía estar a solas.

El apelante admitió que la donante estaba deprimida por la muerte de su padre, con quien estuvo casada y que para principios de marzo de 2013 su madrasta terminó en el hospital. Véase, pág. 30 de la Transcripción. Según el apelante, la donante estuvo hospitalizada desde el 10 de marzo de 2013 al 27 de marzo de 2013 y en el mes de abril de 2013 sufrió otras dos hospitalizaciones. Véase, págs. 33-35 de la Transcripción. El apelante aceptó que no visitó a la donante en el hospital, porque estaba en sus labores diarias y que la cuidaba la demandante. Véase, págs. 38 y 75 de la Transcripción. Sin embargo, sí pudo ir al hospital con un abogado notario para que doña Sara le donara el inmueble en controversia. Su testimonio no deja duda alguna, de que el apelante aprovechó que la demandante no estaba en la habitación y doña Sara estaba sola. Véase, pág. 76 de la Transcripción.

Durante el contrainterrogatorio, el apelante aceptó que fue quien contrató al notario y que a finales de febrero llevó a la donante a su oficina. Véase, pág. 80 de la Transcripción. El apelante admitió que el notario no conocía a la donante, pero en la escritura de donación dio fe de conocer personalmente a los comparecientes. Véase, págs. 86-87 de la Transcripción y Escritura de Donación, pág. 91 del apéndice del recurso.

El notario hizo constar en la Aceptación y Lectura de la Escritura de Donación lo siguiente:

ACEPTACIÓN

---Así lo dicen y otorgan ante mí y en presencia de los testigos instrumentales JESÚS GONZÁLEZ FLORES, pensionado, vecino de Caguas, Puerto Rico y JOSÉ MIGUEL VÁZQUEZ ACEVEDO, vendedor y vecino de Juncos, Puerto Rico, casados y mayores de edad respectivamente, quienes------------------------------------

Manifiestan no tener lazos de consanguinidad ni afinidad con la compareciente SARA MARTÍNEZ MEDINA----------------------------------------------------------

y de **no existir ningún impedimento legal sin tacha para ser testigos, por mí conocido y quienes comparecen a ruego y requerimiento de SARA MARTÍNEZ MEDINA**----------------------------------------------

**quien manifiesta no saber firmar.**--------------------------

LECTURA

---Leída en alta voz por mí, el Notario a los otorgantes y al testigo y en su presencia, el testigo lee en alta voz la escritura en presencia de todos y a ruego y requerimiento de los otorgantes que manifiestan que no saben o no pueden firmar, firman todos fijando además sus iniciales en todos y cada uno de los folios de este documento, el testigo al lado de las huellas digitales pulgares de SARA MARTÍNEZ MEDINA además de estamparlas en todos los folios, la estampan junto a la firma del testigo, todo en un solo acto, todo ante mí el Notario, que de todo lo consignado anteriormente en el presente documento, DOY FE:

--En esta etapa del otorgamiento y todo en un solo acto se expresa que el testigo JOSÉ MIGUEL VÁZQUEZ ACEVEDO DIO LECTURA EN ALTA VOZ la escritura que fue leída por [él] y el otro testigo estampó sus iniciales al lado de las huellas de la donante según se expresó en esta escritura. (Énfasis nuestro).

Véase, pág. 93 de la Transcripción, págs. 91-94 del apéndice.

El testimonio del apelante nos deja claro que la realidad es muy distinta a la que hizo constar el Notario en la Escritura de Donación. Los testigos instrumentales no comparecieron a ruego y requerimiento de la donante, como hizo constar el Notario. El apelante admitió que: (1) la donante no sabía quiénes eran los testigos instrumentales y que los conoció el día que la llevó a la oficina del Notario a entregar unos documentos, (2) que los testigos instrumentales eran personas de su confianza y sus amigos, (3) la donante no tenía amistad y nunca había compartido con los testigos instrumentales y (4) fue quien llevó a los testigos

instrumentales a otorgar la Escritura de Donación de una persona ciega y enferma. Véase, págs. 93-94 de la Transcripción.

El apelante alega que el TPI erró al concluir que declaró que José Miguel Vázquez Acevedo era emplazador del abogado notario. Según el apelante, sólo declaró que el testigo hacía emplazamientos para diferentes abogados. Aunque no declaró expresamente que trabajaba para el Notario, es obvio llegar a esa conclusión de su testimonio. El apelante declaró que José Miguel Vázquez Acevedo hacía emplazamientos para diferentes abogados y admitió que el testigo estaba en la oficina del Notario el día que llevó a la donante. Al igual que, el Notario le pidió a José Miguel Vázquez Acevedo que compareciera como testigo. El apelante reconoció que el testigo era su amigo y que lo conocía hacía muchos años. Véase, págs. 91-93 de la Transcripción.

No existe buena fe, cuando lo expresado en el contrato de donación no es la realidad, como confirmó el propio apelante. Su testimonio probó que aprovechó que doña Sara estaba sola y desvalida en el hospital y logró que le donara el único bien inmueble de su propiedad. Sin lugar a duda, el apelante atentó contra los principios de honestidad, lealtad y honradez, porque otorgó un contrato de donación a sabiendas de que el instrumento público no respondía a la realidad. El apelante defraudó la confianza de una anciana enferma, ciega, que no sabía leer ni escribir, para obtener un beneficio personal. Sus maquinaciones insidiosas configuran el dolo grave que conlleva la nulidad del negocio jurídico. El Art. 343 del Código Civil de 2020, *supra,* autoriza al tribunal a declarar nulo un negocio jurídico, cuando su nulidad es manifiesta como ocurre precisamente en este caso. La aplicación retroactiva del Art. 343, *supra,* evita la grave injusticia que representa aprovecharse y abusar de la confianza de una persona indefensa y desvalida para obtener un beneficio personal.

Por el mismo fundamento, también procede obviar la norma de la ley del caso.

Por otro lado, el apelante cuestiona en el quinto señalamiento de error los honorarios por temeridad en su contra. El apelante no tiene razón. El TPI no abusó de su discreción al ordenarle el pago de honorarios de abogado. Su temeridad es obvia. El apelante ha sido más que temerario, porque insiste en alegar la validez de la donación, a sabiendas de que obtuvo el consentimiento de la donante de forma dolosa y con pleno conocimiento de que lo plasmado en la escritura no responde a la realidad. Sin lugar a duda, su conducta ha ocasionado una litigación durante años en un pleito que pudo evitarse. El apelante tampoco ha demostrado que existe abuso de discreción respecto a la cuantía de los daños que otorgó el TPI.

Por último, el apelante alega que el TPI erró al declarar NO HA LUGAR la reconvención. El error no se cometió. El apelante no tiene ningún derecho a su favor, porque el contrato en el que fundamenta su reclamo es nulo, debido a sus actuaciones dolosas.

**IV**

Por lo fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Domínguez Irizarry concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones